IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HATJIA HUCIC,                                             CIVIL DIVISION

                    Plaintiff,                           Case No. 1:24-cv-00292

          v.

SAINT VINCENT HEALTH CENTER, d/b/a
Saint Vincent Hospital,

                    Defendant.

**COMPLAINT AND JURY DEMAND**

A.      *Preliminary Statement*

1.      The plaintiff Hatjia Hucic brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* to redress violations of her right to be free from employment discrimination, harassment and retaliation based upon her national origin.  Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* when those claims are raised via an amended complaint upon their maturation on March 20, 2025.  A jury trial is demanded.

B.      *Jurisdiction*

2.      The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et seq.*, 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction (when the state law claims mature on March 20, 2025).

3.      On or about March 20, 2024, the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2024-01491.  This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4.      The EEOC issued a Notice of Right to Sue dated July 26, 2024.

5.      This Complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C.      ***The parties***

6.      The plaintiff is an adult individual who, at all times material, resided in Erie, PA (Erie County).

7.      The defendant Saint Vincent Health Center d/b/a Saint Vincent Hospital ("St. Vincent") is an entity doing business in the Commonwealth of Pennsylvania.  At all times material, the defendant had a place of business located at within this district, specifically 232 West 25th Street, Erie, PA 16544 (Erie County).

8.      At all times material, the defendant employed more than fifteen employees.

9.      The defendant was the plaintiff's employer and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

D.      ***Factual Background***

10.     The plaintiff was employed by St. Vincent from February 20, 2017 through February 14, 2024.  The plaintiff is a naturalized citizen of the United States and was born in Bosnia and Herzegovina.  She emigrated to the United States in approximately April 1997 and was granted citizenship in approximately 2003 or 2004.

11.     St. Vincent is a medical facility located in Erie, PA.

12.     The plaintiff was employed as a housekeeper.  Her job duties included cleaning patient rooms, nursing stations and doctors' areas.

13.     The plaintiff was a hardworking employee and performed all the functions of her job in a competent fashion.

14. At all times relevant:

    (a) Travis Philips was the Director until approximately May or June 2023.

    (b) Anela Manjic was the Assistant Manager from approximately early 2022 until May or June 2023, at which time she was promoted to Director. From 20022 through the end of the plaintiff's employment, Manjic was the plaintiff's supervisor.

    (c) James Beers was a shift manager.

    (d) Veede Gambill was a team lead.

    (e) Melissa Walker was a Human Resources representative.

15. Prior to 2022, the plaintiff did not experience any discrimination or harassment at work. Phillips treated the plaintiff with dignity and respect. The plaintiff enjoyed her job and was considered by her management to be an excellent employee. Unfortunately, things changed when Manjic was promoted to Assistant Manager. Although Manjic is Bosnian, like the plaintiff, she discriminated against Bosnian employees (except for her family members who worked at St. Vincent).

16. Throughout the time that Manjic was the plaintiff's supervisor, Manjic made discriminatory statements and comments to and about the plaintiff (and other Bosnian employees). Some examples follow:

    (a) Manjic said that she does not want Bosnians to be in her department and made comments about how she wanted to fire them.

    (b) Manjic often said that "all Bosnians are lazy."

    (c) Manjic often said that she hates Bosnians.

    (d) Manjic complained that the plaintiff did not speak English well and would make disparaging comments to the plaintiff about her lack of proficiency with the English language.

    (e) Manjic refused to hire the plaintiff's daughter, "because she is Bosnian, just like her mother."

17.     Throughout the time that Manjic was the plaintiff's supervisor, Manjic subjected the plaintiff to disparate treatment in the terms and conditions of her employment. Some examples follow:

(a)     The plaintiff was assigned more work to accomplish during the day than similarly situated American employees. Prior to Manjic's promotion to Assistant Manager, the plaintiff was assigned to the 8th floor. After Manjic's promotion, she assigned the plaintiff two floors, the 7th and 9th. Upon information and belief, similarly situated American employees were not assigned two floors. It was difficult for the plaintiff to keep up with the double workload. The plaintiff advised Philips that she was having problems getting both floors done and requested to be reassigned to one floor. Philips told her that she had to make that request to Manjic. When the plaintiff did so, Manjic refused the request and told the plaintiff, "If you don't like my decision, you can just pack up and leave."

(b)     Manjic made the plaintiff work the 7th and 9th floors permanently. These floors were for Covid patients. Manjic did not require American employees to work on the Covid floors.

(c)     From time to time, the plaintiff would ask questions or seek clarifications about job tasks to be performed. Manjic would not listen to the plaintiff, often pretending that she did not understand what the plaintiff was saying, and refused to answer the plaintiff's questions or to provide clarification. Instead, Manjic often threatened to fire the plaintiff if she didn't get the work done. Manjic did not treat similarly situated American employees in this fashion.

(d)     Manjic treated the American employees with respect. However, Manjic was rude to, dismissive of and condescending with the plaintiff. Manjic often told the plaintiff to "shut up" when she was trying to talk, belittled the plaintiff and threatened to fire the plaintiff on numerous occasions.

(e)     Manjic allowed American employees to change shifts from time to time upon their request. Manjic routinely denied, without reason, any such requests made by the plaintiff.

(f)     Manjic tolerated (if not actively encouraged) American employees picking on the plaintiff when the plaintiff had difficulty communicating with them in English. Manjic blamed the problems on the plaintiff, instead of disciplining the American employees for bullying or being impatient. Manjic would step in if American employees were being picked on by others.

(g)     Manjic changed or added to the plaintiff's job assignments suddenly, often resulting in contradictory orders.  Manjic would yell at the plaintiff for not getting the work done quickly enough, threatening to fire the plaintiff in the process.  Manjic did not do this to similarly situated American employees.

18.     Throughout the time that Manjic was the plaintiff's supervisor, Manjic subjected the plaintiff to heightened scrutiny.  Some examples follow:

(a)     Manjic often sent Beers with a flashlight to inspect the rooms that the plaintiff cleaned.  Beers did not use a flashlight to inspect the rooms that American employees had cleaned.

(b)     Manjic would inspect rooms that the plaintiff cleaned, purposefully looking for things that were "out of place" to manufacture reasons to subject the plaintiff to discipline.  Manjic did not do this to American employees.

(c)     Manjic, Beers and Gambler took photos of rooms that the plaintiff was supposed to clean and used those photos as "evidence" that the plaintiff had not properly cleaned the rooms.  Sometimes, the photos taken did not match with the dates that she cleaned the room.  Similarly situated American employees were not subjected to this practice.

(d)     The plaintiff was written up for alleged infractions without being told about the write ups.  The plaintiff would discover these write ups when she accessed her WorkDay system.  Neither Manjic nor any other managers told the plaintiff about the existence of these write ups.  These write ups were placed in the plaintiff's personnel records to be used as a pretext for termination due to poor job performance.

19.     On February 14, 2024, the plaintiff reported to work as usual.  She worked on the 9th floor and the 7th floor in the morning.  That afternoon, the plaintiff was told to meet with Manjic when she completed the room that she was working on.  After the plaintiff was finished, she met with Manjic.  Manjic told the plaintiff that she was being fired.  Manjic said that Human Resources had instructed her to terminate the plaintiff's employment because the head inspector said that the plaintiff's rooms "were dirty."

20.     The plaintiff was surprised that she was being fired because she had performed all of her work and the rooms were not dirty.  She called Human Resources herself.  Walker, the Human Resources representative, told her that there was no information that showed that Human Resources had made the decision to terminate her employment.  Walker seemed genuinely surprised by this and promised to do an investigation.  The plaintiff never heard back from Walker or anyone else in Human Resources.

21.     Human Resources did not instruct Manjic to terminate the plaintiff's employment and there was no finding by the "head inspector" that the plaintiff's rooms were dirty.  Manjic made the decision to fire the plaintiff herself and did not get approval from Human Resources. The reason given for the plaintiff's termination was nothing more than a pretext and the real reason that she was fired was because of her national origin.

## FIRST CAUSE OF ACTION

22.     The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

23.     The plaintiff's national origin is Bosnia and Herzegovina and thus she is protected against discrimination on the basis of her national origin pursuant to Title VII.

24.     The plaintiff was qualified for her position.

25.     While employed, the plaintiff was treated differently in the terms and conditions of her employment than similarly situated American employees and her work was subjected to heightened scrutiny on account of her national origin.

26.     As detailed above, the plaintiff was subjected to a hostile workplace because of her national origin.

27.    Despite her qualifications, the plaintiff was terminated.  The reasons given for her discharge were a pretext.

28.    The defendant's discharge of the plaintiff was because of her national origin in violation of Title VII.

29.    The defendant's violation of Title VII was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of discrimination based on national origin.

WHEREFORE, the plaintiff respectfully requests judgment be entered in her favor and against the defendant and that the defendant be required to provide all appropriate remedies under Title VII and the PHRA (when that claim matures on March 20, 2025), including attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*

Michael J. Bruzzese
Pa. I.D. No. 63306
220 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
(412) 281-8676

Counsel for the plaintiff

Dated:  October 21, 2024